IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUKE LEFEVER, | |
| Plaintiff, | **4:20CV3066** |
| vs. | |
| DAWSON COUNTY SHERIFF'S DEPARTMENT, and DEPUTY IVAN CASTELLANOS, | **MEMORANDUM & ORDER** |
| Defendants. | |
| LUKE LEFEVER, | |
| Plaintiff, | **4:20CV3067** |
| vs. | |
| LINCOLN COUNTY SHERIFF'S DEPT., SHERIFF JEROME KRAMER, DEPUTY ROLAND KRAMER, and DEPUTY BRETT C. SCHMIDT, | **MEMORANDUM & ORDER** |
| Defendants. | |
| LUKE LEFEVER, | |
| Plaintiff, | **4:20CV3068** |
| vs. | |
| NEB. STATE PATROL, and CARLOS TREVINO, Trooper; | **MEMORANDUM & ORDER** |
| Defendants. | |

# I. INTRODUCTION

Plaintiff, Luke LeFever ("LeFever") a state prisoner currently incarcerated at the Tecumseh State Correctional Institution,[1] filed three separate actions on June 11, 2020. The actions were consolidated on the court's own motion on June 15, 2020, as involving common questions of law or fact,[2] *see* Fed. R. Civ. P. 42, and LeFever was granted leave to proceed in forma pauperis with the obligation to pay only a single filing fee under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b). Now that LeFever has paid the required initial partial filing fee, the court conducts an initial review of his three complaints to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

# II. SUMMARY OF COMPLAINTS

## A. Case No. 4:20CV3066

Defendants named in Case No. 4:20CV3066 are the Dawson County Sheriff's Department and its employee, Deputy Ivan Castellanos. LeFever characterizes his

---

[1] LeFever pled guilty to attempted first-degree murder on April 1, 2019, and subsequently was sentenced to a term of 48 to 50 years of imprisonment. See *State of Nebraska v. Luke E.F. LeFever*, Case No. CR19-6, District Court of Howard County, Nebraska (available at https://www.nebraska.gov/justice/). That conviction is unrelated to the events described in the present action.

[2] LeFever claims he sustained severe personal injuries on June 4, 2018, as a result of Defendants' alleged wrongful actions in tasing him, ramming his vehicle, and shooting him multiple times. The court takes judicial notice that criminal charges are pending against Lefever in two counties as a result of his encounters with Defendants on that date. He is charged with possession of a firearm by a felon, theft by unlawful taking, operating a motor vehicle to avoid arrest, criminal mischief, and unauthorized use of a motor vehicle in Dawson County, *see State of Nebraska v. Luke LeFever*, Case No. CR20-40, District Court of Dawson County, Nebraska (available at https://www.nebraska.gov/justice/), and with two counts of attempted assault on an officer, two counts of use of a deadly weapon to commit a felony, and operating a motor vehicle to avoid arrest in Lincoln County, *see State of Nebraska v. Luke LeFever*, Case No. CR20-30, District Court of Lincoln County, Nebraska (available at https://www.nebraska.gov/justice/).

claims as involving "police brutality, excessive force, assault, and attempted murder, police negligence." (Filing 1 at 2.) He alleges:

> June 4th 2018, Dawson County Neb. Deputy Ivan Castellanos stopped to assist a broke down car on a gravel road near Gothenburg, Nebraska. I was helping remove a tire that needed replaced. Castellanos pat searched me finding nothing. I asked if I was under arrest and he said no. As I was walking away he assaulted me by shooting me in the back with his taser. Probe was later found in my back at the hospital. In fear for my life I ran away (still not breaking any laws). He gave a wrong radio announcement of "shots fired" after he discharged his service weapon 1 time at me while I was unarmed. After he attempted to murder me and made the "shots fired" call I was relentlessly chased/hunted by the Nebraska State Patrol and Lincoln County Sheriffs. Because of Castellanos actions the other agencies fired at least 40 time(s) but maybe upwards of 70 times into the vehicle hitting me 9 times.

> Because of Castellanos's assault and attempted murder and criminal negligence I was gravely wounded in the attempted murder by other officers acting on Castellanos actions. I was wounded so bad that my leg was amputated above the knee.

(Filing 1 at 5-6.)

## B. Case No. 4:20CV3067

Defendants named in Case No. 4:20CV3067 are the Lincoln County Sheriff's Department, Sheriff Jerome Kramer, Deputy Roland Kramer, and Deputy Brett L. Schmidt. LeFever claims he was "brutalized by police" and subjected to "excessive force, attempted murder, police negligence." (Filing 1 at 2.) He alleges:

> June 4th 2018, Lincoln County Nebraska. The Sheriff and his Deputies are responsible for firing at least 54 shots into the vehicle I was unarmed in. I was struck 9 times resulting in amputation of my right leg above the knee. I nearly lost my life.

> They attempted to murder me by blindly firing into the vehicle. They used firearms to commit felon[ies], caused life threatening bodily harm.

(Filing 1 at 5-6.)

### C. Case No. 4:20CV3068

Defendants named in Case No. 4:20CV3068 are the Nebraska State Patrol and Trooper Carlos Trevino. LeFever claims "attempted murder, assault with deadly weapon, use of firearm to commit felony, negligence." (Filing 1 at 2.) He alleges:

> June 4th 2018, Lincoln County Nebraska. Trooper Trevino ra[m]med into the vehicle I was in unarmed then he jumped out and fired 14 – 45acp rounds from his service revolver. During this attempted murder I was gravely wounded. Had my leg amputated and nearly lost my life.

> Because of his actions my life was put in jeopardy. He attempted to murder me after he assaulted me with a deadly weapon to wit – motor vehicle.

(Filing 1 at 5-6.)

### III.  LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v.*

*JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## IV.  JURISDICTION

Federal district courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States. She invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Id.*

Liberally construing LeFever's three complaints, he is claiming Defendants violated his rights under the Fourth Amendment to the United States Constitution (made applicable to the states under the Fourteenth Amendment), and he is bringing

5

suit under authority of 42 U.S.C. § 1983. In addition, LeFever is asserting various claims under Nebraska law.

Because LeFever does not allege that his citizenship lies outside of Nebraska, this court's ability to entertain the state-law claims cannot be predicated on § 1332, but instead must depend upon 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." When the district court has disposed of all federal claims that conferred original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367 (c)(3). Usually, the dismissal of the federal claims "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted).

## V. DISCUSSION OF CLAIMS

### A. Federal Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.* at 50.

It is reasonable to infer from LeFever's pleadings that Deputy Castellanos, Sheriff Kramer, Deputy Kramer, Deputy Schmidt, and Trooper Trevino were all acting under color of state law when they allegedly violated his constitutional rights. However, because LeFever does not specify that these Defendants are being sued in their individual capacities, the court must presume they are being sued only in their official capacities. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). "Because section 1983 liability exposes public servants to civil liability and damages, [the

Eighth Circuit] ha[s] held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (internal citations omitted); *see Baker*, 501 F.3d at 923 ("A suit against government officials in their official capacities is another way of pleading an action against the entity of which they are agents.").

In addition to seeking an award of damages, LeFever wants criminal charges filed against each officer. The authority to initiate criminal charges lies only with state and federal prosecutors. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1733 (2019) (Gorsuch, J., concurring in part and dissenting in part) ("the decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials"); *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion"); *Cragoe v. Maxwell*, No. CIV 11-4188, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012) ("If [the pro se plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings.") (collecting cases); *Blechinger v. Sioux Falls Hous. & Redevelopment Comm'n*, No. CIV. 12-4004, 2012 WL 174653, at *3 (D.S.D. Jan. 20, 2012) (neither pro se plaintiff nor the court can charge defendant with a crime because "[w]hether to prosecute and what criminal charges to file or bring are decisions that generally rest in the prosecutor's not the court's discretion") (internal quotation marks and citation omitted). Thus, LeFever's request to initiate criminal charges does not state a federal claim. *See, e.g., Knight-Bey v. Bacon*, No. 8:19CV330, 2020 WL 1929075, at *4 (D. Neb. Apr. 21, 2020) (dismissing comparable claim); *Barta v. Farm Serv. Agency*, No. 8:11CV198, 2011 WL 6399728, at *2 (D. Neb. Dec. 20, 2011) (same).

### 1. Case No. 4:20CV3066

LeFever alleges that Deputy Castellanos is employed by the Dawson County Sheriff's Department, but sheriff's departments are not suable entities. See *Jaso v.*

*Dawson Cty. Sherriffs*, No. 4:19CV3106, 2020 WL 820173, at *1 (D. Neb. Feb. 19, 2020).[3] Thus, the Dawson County Sheriff's Department will be dismissed from the action, and the official-capacity claim brought against Deputy Castellanos will be treated as having been brought against Dawson County.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against the county, LeFever must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475

---

[3] Each county in Nebraska may sue and be sued in its own name, Neb. Rev. Stat. § 23-101, but the same is not true of county offices or departments. *See Holmstedt v. York County Jail Supervisor (Name Unknown)*, 739 N.W.2d 449, 461 (Neb. App. 2007) (York County Sheriff's Department was not proper defendant), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008); *Winslow v. Smith*, 672 F. Supp. 2d 949, 964 (D. Neb. 2009) (Gage County Sheriff's Office was not proper defendant); *see also Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such").

U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

LeFever's complaint does not contain any facts from which it might reasonably be inferred that Dawson County is liable for his alleged injuries. "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

Furthermore, Dawson County cannot be held liable under 42 U.S.C. § 1983 without an underlying constitutional violation by Deputy Castellanos. *See Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City"). It not necessary, however, for Deputy Castellanos to be sued in his individual capacity.[4]

---

[4] "Municipal liability requires a *constitutional violation* by a municipal employee, but it does not require the plaintiff to bring suit against the individual employee." *Meier v. City of St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019) (emphasis in original), *cert. denied*, 140 S.Ct. 2566 (2020); *see Webb v. City of Maplewood*, 889 F.3d 483, 48788 (8th Cir. 2018) ("[A]lthough there must be an unconstitutional act by a municipal employee before a municipality can be held liable, there need not be a finding that a municipal employee is liable in his or her individual capacity." (cleaned up)).

9

To establish a violation of Fourth Amendment rights under 42 U.S.C. § 1983, a plaintiff must show that a seizure occurred and that it was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). A Fourth Amendment "seizure" requires an intentional act by a governmental actor. *McCoy v. City of Monticello*, 342 F.3d 842, 847 (8th Cir. 2003).

LeFever alleges that Deputy Castellanos (1) shot him in the back with a taser probe while he was walking away from the deputy after being told he was not under arrest, (2) fired one shot at LeFever with his service weapon as LeFever was running away after being tased, and (3) radioed in a false "shots fired" call after discharging his weapon. Under Eighth Circuit precedent, only the first of these actions may give rise to a plausible Fourth Amendment claim.

The Eighth Circuit has stated that in accordance with the Supreme Court's decision in *California v. Hodari D.,* 499 U.S. 621 (1991), "our understanding of a Fourth Amendment seizure of the person flows from the common law." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013). The Court of Appeals explained:

> Although "seizure" and "arrest" were not identical at common law, we look to the common law concept of arrest to "define[ ] the limits of a seizure of the person." *Hodari D.,* 499 U.S. at 627 n. 3, 111 S.Ct. 1547 (emphasis omitted). At common law, "[i]t [wa]s perfectly clear that ... touching the person constitute[d] an arrest." *Sandon v. Jervis,* (1859) 120 Eng. Rep. 760 (Exch.Cham.) 762; El. Bl. & El. 942, 947 (Williams, J.); *see also Genner v. Sparks,* (1704) 87 Eng. Rep. 928 (Q.B.) 929; 6 Mod. 173 (per curiam) ("[I]t was agreed, that if here he had but touched the defendant even with the end of his finger, it had been *an arrest.*").

> Physical contact was not the sole means of arrest under the common law. *See, e.g., Arrowsmith v. Le Mesurier,* (1806) 127 Eng. Rep. 605 (Ct.Com.Pl.) 606; 2 Bos. & Pul. (N.R.) 211, 211 ("I can suppose that an arrest may take place without an actual touch."). Common law arrest required "'*either* touching *or* submission.'" *Hodari D.,* 499 U.S. at 627, 111 S.Ct. 1547 (quoting Rollin M. Perkins, *The Law of Arrest,* 25 Iowa L.Rev. 201, 206 (1940)) (emphasis added). Because the Supreme Court has directed us to apply this common law

dichotomy to seizure of the person under the Fourth Amendment, we similarly "require[ ] *either* physical force ... *or,* where that is absent, *submission* to the assertion of authority." *Id.* at 626, 111 S.Ct. 1547.

To constitute a Fourth Amendment seizure, an application of physical force "must be willful" because "the word 'seizure' ... can hardly be applied to an unknowing act." *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Whether physical force was "intentionally applied," *id.* at 597, 109 S.Ct. 1378 (emphasis omitted), is determined by the officer's objective behavior, not his subjective motive. *Cf. Brendlin v. California,* 551 U.S. 249, 260, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Also implicit in the term "seizure" is a requirement that the application of physical force "restrain[ ] ... freedom of movement." *Id.* at 254, 127 S.Ct. 2400. This restraint need not actually "'succeed in stopping or holding [the person] even for an instant.'" *Hodari D.,* 499 U.S. at 625, 111 S.Ct. 1547 (quoting Asher Cornelius, *Search and Seizure* 163-64 (2d ed.1930)). But the seizure does not outlast the restraint on free movement. *See id.* at 624–25, 111 S.Ct. 1547.

*Id.* at 1208.

Provided that Deputy Castellanos acted intentionally, his deployment of a taser probe into LeFever's back was a "seizure" for Fourth Amendment purposes, even though it did not prevent LeFever from running away.[5] *See Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995) ("[A] seizure is 'effected by the slightest application of physical force' despite later escape." (quoting *Hodari D.,* 499 U.S. at 625)).

---

[5] The result would be different in those circuits which read *Hodari D.* and other Supreme Court precedent as "requiring intentional termination of movement or acquisition of physical control in flight situations, regardless of the force applied." *Brooks v. Gaenzle*, 614 F.3d 1213, 1223 (10th Cir. 2010) (citing cases); *see, e.g., Tabares v. City of Huntington Beach*, No. 818CV00821JLSJDE, 2019 WL 4455999, at *5 (C.D. Cal. July 30, 2019) (officer's deployment of taser, which had no apparent incapacitating effect on suspect, was not a seizure).

"The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. [The court] must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." *Zubrod v. Hoch*, 907 F.3d 568, 575-76 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (cleaned up)).

While it is plausible to conclude, based on the few facts alleged by LeFever, that Deputy Castellanos's taser deployment was objectively unreasonable under the circumstances, the resulting Fourth Amendment "seizure" ended when LeFever ran away from the deputy. "[I]f someone is 'seized,' and then somehow gets away, as [LeFever] did, the first seizure 'does not continue during the 'period of fugitivity.'" *Gardner v. Buerger*, 82 F.3d 248, 254 (8th Cir. 1996) (quoting *Ludwig,* 54 F.3d at 471, in turn quoting *Hodari D.,* 499 U.S. at 625). "Thus, several distinct seizures may occur during a single course of events or encounter with the police." *Id.*

It is alleged that Deputy Castellanos next discharged his service weapon, but LeFever does not claim to have been struck by a bullet in this instance. Because LeFever was not wounded and did not submit to this display of force or to any commands that may have been issued at this time, there was no second "seizure" by Deputy Castellanos. *See Atkinson, supra*; *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir. 1993) ("[A] seizure occurs only when the pursued citizen is physically touched by the police or when he submits to a show of authority by the police."). Without a "seizure," there was no violation of LeFever's Fourth Amendment rights.[6]

---

[6] Although no Fourth Amendment claim can be maintained in the absence of a "seizure," a misaimed shot might give rise to a substantive due process claim under the Fourteenth Amendment. *See, e.g., James v. Chavez*, 830 F. Supp. 2d 1208, 1271 (D.N.M. 2011) ("The Court has concluded that, when Carter fired a shot at Murphy Sr., no seizure occurred. The Court has also concluded that Carter did not seize M. Murphy when he missed her with his bullet. Thus, James may proceed on a substantive due-process theory regarding Carter firing a shot at Murphy Sr. and M.

Finally, LeFever alleges that Deputy Castellanos then made a "wrong" radio call that that shots were fired, which caused other law enforcement officers to pursue and use deadly force to apprehend him. While LeFever was "seized" by the other officers, the court is not aware of any reported decision which holds that an officer who merely broadcasts false information can be held liable for a § 1983 "excessive force" claim. *See, e.g., Goolsby v. D.C.*, 317 F. Supp. 3d 582, 597 (D.D.C. 2018) ("In the absence of any case law suggesting that a dispatcher can be held liable for a police officer's use of excessive force, the Court concludes that any constitutional violation here is not clearly established.").

In addition, LeFever labels the radio call an act of "police negligence," but "[t]he Supreme Court has not yet extended liability under the Fourth Amendment to include negligence claims." *McCoy*, 342 F.3d at 847 n. 3. Thus, no actionable § 1983 claim is stated. *See, e.g., Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (mistake of police communications operator in identifying person who was subject of arrest warrant, and arresting officer's reliance on it to arrest innocent person, did not render an arrest "unreasonable" within the meaning of the Fourth Amendment, as actions of operator and officer amounted to nothing more than negligence); *Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006) ("[T]he dispatchers are not liable for their negligent transmissions or their failure to ascertain more details before sending out BOLOs [be-on-the-lookout notices] mentioning a possible robbery. In most contexts, negligence is insufficient to support a § 1983 claim. Given that there is no evidence of deliberate indifference or recklessness …, the [plaintiffs] have not established a basis to hold the [police] dispatchers accountable for a seizure in which they did not directly participate." (internal quotations and citations omitted)); *see also Goolsby*, 317 F. Supp. 3d at 596 (police dispatcher might violate Fourth Amendment by "maliciously misleading police officers without suspicion of wrongdoing in a manner that leads to another's detention").

The foregoing decisions involved § 1983 "false arrest" claims, which turn on the question of whether the arresting officers acted with probable cause. *See Parsons*

---

Murphy as the Fourth Amendment does not apply to those situations."), *aff'd*, 511 F. App'x 742 (10th Cir. 2013).

*v. McCann*, 138 F.Supp.3d 1086, 1106 (D. Neb. 2015) ("A false arrest is a violation of the Fourth Amendment right against the unreasonable seizure of persons.").[7] In contrast, a § 1983 "excessive force" claim can exist regardless of whether the officers had probable cause to make an arrest; the pivotal question, rather, is whether the amount of force the officers used in seizing the person was objectively reasonable. "Although an excessive force claim is subject to a 'reasonableness' standard under the Fourth Amendment as is a false arrest claim, the two claims require quite different inquiries." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). "Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Id.*

As a matter of law, however, it has been that "if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1332 (11th Cir. 2006); *see Trang Nguyen v. Lokke*, No. 11-CV-3225 PJS/SER, 2013 WL 4747459, at *4 (D. Minn. Sept. 4, 2013) ("When there is no right to seize a citizen—that is, when there is no right to detain a citizen even momentarily—then there is also no right to use force against that citizen."); *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 n. 13 (9th Cir. 2015) ("Like this court, all other circuits that have addressed the question prohibit a finding of excessive force predicated *only* on the fact of unlawful arrest…. That principle, however, is fully consistent with the recognition that 'the damages recoverable on an unlawful arrest claim include

---

[7] "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010)). "Probable cause exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* (cleaned up). "An officer, however, is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Id.* (quoting *Borgman v. Kedley,* 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting *Walker,* 414 F.3d at 992)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Id.* (quoting *Borgman*, 646 F.3d at 523).

14

damages suffered because of the use of force in effecting the arrest.'" (quoting *Bashir,* 445 F.3d at 1332) (emphasis in original)); *but cf. United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("[A] defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest."); *Velazquez*, 793 F.3d at 1024 ("[F]orce used by an officer to effectuate an arrest, 'regardless of whether [the officer] had probable cause to [make the] arrest,' may still be reasonable, for instance to overcome the arrestee's forcible resistance." (quoting *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 921-22 (9th Cir.2001)).

This line of cases suggests that if the other law enforcement officers seized LeFever in the erroneous belief they had probable cause to arrest him because of the "shots fired" radio call, and if Deputy Castellanos acted with a higher degree of culpability than negligence in making that call, then Deputy Castellanos might be held liable for LeFever's physical injuries as part of a § 1983 "false arrest" claim.[8] *See Berg v. County of Allegheny,* 219 F.3d 261, 272 (3d Cir. 2000) ("As a general rule, a government official's liability for causing an arrest is the same as for carrying it out. It is thus clear that § 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." (citations omitted)); *Goolsby*, 317 F. Supp. 3d at 598  n. 6 ("As courts of appeals have recognized, damages awarded on a false arrest claim can potentially include damages related to the use of force to effectuate the arrest."); *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1548 (2017) ("[P]laintiffs can—subject

---

[8] If such a claim were to be made, this action likely would be stayed pending the outcome of LeFever's pending criminal cases. "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see, e.g.*, *Horton v. Pennington*, No. 5:17-CV-05160, 2018 WL 1023116, at *3-4 (W.D. Ark. Feb. 22, 2018) (staying plaintiff's claim that he was arrested without probable cause, because that constitutional claim could be raised in his criminal case, but allowing excessive force claim to proceed where it had no bearing on his criminal case, given that he was not charged with resisting arrest or any related offense).

to qualified immunity[9]—generally recover damages that are proximately caused by any Fourth Amendment violation. Thus, there is no need to dress up every Fourth Amendment claim as an excessive force claim." (citations omitted)).[10]

Alternatively, LeFever may be able to pursue a substantive due process claim against Deputy Castellanos in this situation. *See Berg,* 219 F. 3d at 274 ("Where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, it may be that a due process 'deliberate indifference' rather than a Fourth Amendment analysis is appropriate.").[11] For example, in *Griffin v. Hilke*, 804 F.2d 1052 (8th Cir. 1986), the plaintiff (Griffin) was pursued by two police officers. The first officer (Stoll) "sent a broadcast over police airways that he was chasing a suspect wanted for a possible assault and robbery." *Id.* at 1054. The second officer (Hilke) responded to the radio call, which indicated the suspect was armed, and he shot Griffin in the leg. The Eighth Circuit ruled that "Stoll's conduct

---

[9] [L]aw enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005); *see, e.g.*, *Williams v. Decker*, 767 F.3d 734, 743 (8th Cir. 2014) (officers were entitled to qualified immunity where they arrested plaintiff based upon inaccurate information provided by dispatcher).

[10] The court is not aware of any reported decision which holds that an officer who merely broadcasts false information can be held liable for a § 1983 "excessive force" claim. *See, e.g., Goolsby*, 317 F. Supp. 3d at 597 ("In the absence of any case law suggesting that a dispatcher can be held liable for a police officer's use of excessive force, the Court concludes that any constitutional violation here is not clearly established.").

[11] The "shock the conscience" standard typically is employed when determining whether governmental action violates due process rights under the Fifth and Fourteenth Amendments. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018); *see County of Sacramento v. Lewis,* 523 U.S. 833, 847, n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"). "[T]he 'shock the conscience' standard is satisfied where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Id.,* at 1906 (quoting *Lewis*, 523 U.S at 849-850).

in transmitting an erroneous broadcast did not rise to the level of a substantive constitutional violation, because he never used force against Griffin or otherwise committed an unreasonable seizure." *Id.* "To recover against Stoll under section 1983 for a due process violation, Griffin was required to plead and prove that Stoll was more than negligent." *Id.* Because the record failed to disclose any evidence that Stoll was more than negligent, the Court of Appeals ordered that the claim against him be dismissed.[12]

In summary, the complaint in Case No. 4:20CV3066 fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983. The official-capacity claim can only be maintained if LeFever files an amended complaint in which sufficient facts are alleged to establish municipal liability. Alternatively, or in addition to seeking relief against Dawson County through the official-capacity claim, LeFever may name Deputy Castellanos as a Defendant in his individual capacity.

## 2. Case No. 4:20CV3067

Because the Lincoln County Sheriff's Department is not a suable entity, *see Jaso*, *supra*, it will be dismissed from the action, and the official-capacity claims brought against Sheriff Kramer, Deputy Kramer, and Deputy Schmidt will be treated as having been brought against their actual employer, Lincoln County.

---

[12] The *Griffin* decision predates *Graham v. Conner*, 490 U.S. 386 (1989), in which the Supreme Court held that "[t]he Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019). This holding "simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7, (1997). More specifically, the Supreme Court has concluded that, if a search or seizure did not occur, the Fourth Amendment does not cover the situation, and the plaintiff may proceed on a substantive due-process theory. *See Lewis*, 523 U.S. at 842-844 ("The Fourth Amendment covers only 'searches and seizures,' neither of which took place here.... *Graham*'s more-specific-provision rule is therefore no bar to respondents' suit.").

These Defendants allegedly were responsible for blindly firing at least fifty-four shots into LeFever's vehicle, nine of which struck his person. The "seizure" requirement is thus satisfied, even if the officers did not succeed in stopping LeFever. *See Atkinson, supra*. The seizure may also be "unreasonable," inasmuch as LeFever alleges he was unarmed and fleeing for his life. "Both the Supreme Court and [the Eighth Circuit] have repeatedly stated that '[a]n officer may not use deadly force against a fleeing suspect *unless* the suspect poses an *immediate and significant threat* of serious injury or death to the officer or to bystanders.'" *Wallace v. City of Alexander*, 843 F.3d 763, 769 (8th Cir. 2016) (emphasis in original; quoting *Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015)); *see Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.").[13]

LeFever does not allege that Lincoln County has an official policy authorizing the use of deadly force against a fleeing suspect in the absence of a threat of serious physical harm to the officer or others, nor does he allege there was an unofficial custom to this effect. However, if Sheriff Kramer authorized the shooting, either through his words or deeds, there could be municipal liability.

"[E]ven in the absence of an official policy or a custom, the Supreme Court has made clear that though proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Davison v.*

---

[13] "Deadly force is such force that creates a substantial risk of causing death or serious bodily harm." *Church v. Anderson*, 249 F. Supp. 3d 963, 968 n. 2 (N.D. Iowa 2017) (quoting *Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009), *aff'd*, 898 F.3d 830 (8th Cir. 2018). "Thus, deadly force includes shooting a person with a firearm even where that person does not die." *Id.*

18

*City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (cleaned up). In this scenario, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur,* 475 U.S. at 481). In Nebraska, a county sheriff exercises final policymaking authority for the county in the area of law enforcement. *Dean v. Cty. of Gage*, 807 F.3d 931, 941-42 (8th Cir. 2015); *see Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (county sheriff, as final policymaker, allegedly condoned use of excessive force against fleeing arrestees).

LeFever alleges Sheriff Kramer and the deputies were jointly "responsible" for firing at least 54 shots, but this is merely a legal conclusion, which is not sufficient to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Unless the sheriff ordered the shooting or was an active participant, no liability can attach to Lincoln County.

In summary, the complaint in Case No. 4:20CV3067 fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983. The official-capacity claims can only be maintained if LeFever files an amended complaint in which sufficient facts are alleged to establish municipal liability (as, for example, by showing that the shooting was expressly or tacitly authorized by Sheriff Kramer). Alternatively, or in addition to seeking relief against Lincoln County through the official-capacity claims, LeFever may name Sheriff Kramer, Deputy Kramer, and Deputy Schmidt as Defendants in their individual capacities. Because "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" in order to hold the official personally liable, *Iqbal*, 556 U.S. at 676, LeFever should specify what action was taken by each of these Defendants to violate his constitutional rights, rather than alleging, as he currently does, what action they took collectively.

### 3. Case No. 4:20CV3068

The Nebraska State Patrol ("NSP") is a department of the State of Nebraska. *See* Neb. Rev. Stat. § 81-2001; *Steckelberg v. Rice*, 184 F. Supp. 3d 746, 754 n. 4

19

(D. Neb. 2016), *aff'd*, 878 F.3d 630 (8th Cir. 2017). "Eleventh Amendment bars claims for damages that are brought in federal court by private parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity." *Webb v. Nebraska*, No. 8:19CV416, 2019 WL 5684393, at *4 (D. Neb. Nov. 1, 2019) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995)).[14] The § 1983 claims alleged against NSP and Trooper Trevino in his official capacity will therefore be dismissed with prejudice. *See Tex. Cmty. Bank, N.A. v. Mo. Dep't of Soc. Servs., Div. of Med. Servs.*, 232 F.3d 942, 943 (8th Cir. 2000) (where Eleventh Amendment barred suit, state agency was entitled to dismissal with prejudice); *Warren v. Fort Dodge Corr. Facility*, 372 F. App'x 685 (8th Cir. 2010) (modifying dismissal to be with prejudice). This case can only proceed if LeFever files an amended complaint which names Trooper Trevino as a Defendant in his individual capacity.

### B. State Claims

As discussed previously, the court does not have original jurisdiction to hear LeFever's state-law tort claims, nor is it likely to exercise supplemental jurisdiction if LeFever's federal claims are dismissed. With that caveat, the court will briefly discuss possible state claims in each case.

### 1. Case No. 4:20CV3066

The Nebraska Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 to 13-928, "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *17 (D. Neb. Sept. 16, 2019) (quoting *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007)); *see* Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent,

---

[14] In addition, States or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

4:20-cv-03066-RGK-PRSE   Doc # 7   Filed: 08/03/20   Page 21 of 26 - Page ID # 49

provided by the [PSTCA].”). Dawson County is a political subdivision of the State of Nebraska. *See* Neb. Rev. Stat. § 13-903(1).

"Where a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA." *McKenna v. Julian*, 763 N.W.2d 384, 390 (Neb. 2000) (affirming dismissal of claims brought against individual police officer for assault, battery, and false arrest, based on sovereign immunity), *abrogated on other grounds by Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264 (Neb. 2010). "Claims against a political subdivision employee for acts and omissions performed in the course and scope of employment are deemed actions against the county and not the employee personally." *Foell v. Cty. of Lincoln*, No. 4:17CV3044, 2019 WL 2996276, at *14 (D. Neb. July 9, 2019) (citing *Cappel v. State*, 298 Neb. 445, 452 (Neb. 2018)). Because it does not appear that any action allegedly taken by Deputy Castellanos was performed outside the course and scope of his employment, the PSTCA applies in this case.

The PSTCA "eliminates, in part, the traditional immunity of political subdivisions for the negligent acts of their employees." *Duggin v. City of Omaha*, No. 8:19CV453, 2020 WL 406361, at *2 (D. Neb. Jan. 24, 2020) (quoting *Doe v. Omaha Pub. Sch. Dist.*, 727 N.W.2d 447, 453 (Neb. 2007)). Importantly, however, the PSTCA does *not* waive immunity for any claim "arising out of assault, battery, false arrest," and certain other intentional torts. Neb. Rev. Stat. § 13-910(7). This exception "does not merely bar claims for assault or battery [or false arrest]; in sweeping language it excludes any claim *arising out of* assault or battery [or false arrest]." *Britton v. City of Crawford*, 803 N.W.2d 508, 517 (Neb. 2011) (internal quotation marks and citation omitted; emphasis added).

If done intentionally (and no facts are alleged to indicate otherwise), Deputy Castellanos' alleged actions in tasing LeFever and firing his service weapon would provide grounds for bringing battery and assault claims under Nebraska law.

> Battery and assault are separate torts resulting from a defendant's intentional actions directed toward another.... A battery requires 'an actual infliction' of an unconsented injury upon or unconsented contact

21

with another.... In contrast, [the Nebraska Supreme Court has] characterized the intentional tort of assault as a 'wrongful offer or attempt with force or threats, made in a menacing manner, with intent to inflict bodily injury upon another with present apparent ability to give effect to the attempt,' without requiring that the one assaulted be subjected to any actual physical injury or contact.

*Reavis v. Slominski*, 551 N.W.2d 528, 536 (Neb. 1996) (quoting *Bergman v. Anderson,* 411 N.W.2d 336, 339 (Neb. 1987) (internal quotations and citation omitted)). Battery and assault are included within the PSTCA's "intentional torts" exception, so there can be no liability with respect to these alleged actions.

LeFever's claim that Deputy Castellanos' "shots fired" radio call caused other law enforcement officers to assault, batter, or falsely arrest him may stand on a different footing, because the officers who allegedly committed those intentional torts were not employed by Dawson County. For example, in *Doe v. Omaha Pub. Sch. Dist.,* 727 N.W.2d 447 (Neb. 2007), it was held that the "intentional torts" exception did not apply when the school district (OPS) was sued for negligence in failing to protect a student (Doe) from being sexually assaulted by another high school student. Relying on the United States Supreme Court's interpretation of a comparable exception in the Federal Tort Claims Act, in *Sheridan v. United States,* 487 U.S. 392 (1988), the Nebraska Supreme Court ruled that the claim did not "arise out of" the assault, stating:

Doe's claim is not based upon the assault itself, and he could not prevail merely by proving that it occurred. Rather, he alleges that *before* the alleged assault, OPS breached an independent legal duty, unrelated to any possible employment relationship between the assailant and OPS, to take reasonable steps to prevent foreseeable violence from occurring on its premises. The claim therefore does not arise from an assault, but, rather, from an alleged negligent failure to protect a student from a foreseeable act of violence. Accordingly, the complaint does not clearly indicate the applicability of a defense under § 13-910(7) which would legally bar the relief sought.

*Doe v. Omaha Publ. Sch. Dist.*, 727 N.W.2d at 456 (emphasis in original).

22

But even assuming that LeFever can state an actionable claim for negligence[15] or recklessness[16] against Deputy Castellanos, the action could be subject to dismissal for noncompliance with the pre-suit notice requirements of the PSTCA. Under Nebraska law, the filing or presentment of a claim to the appropriate political subdivision, while it is not a jurisdictional prerequisite, is a condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001); Neb. Rev. Stat. § 13-920 ("No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment …, unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905.").[17]

---

[15] "Ordinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances, or the failing to do something that a reasonably careful person would do under similar circumstances." *Wilke v. Woodhouse Ford, Inc*., 774 N.W.2d 370, 379 (Neb. 2009). "Gross negligence is great or excessive negligence, which indicates the absence of even slight care in the performance of a duty." *Palmer v. Lakeside Wellness Ctr*., 798 N.W.2d 845, 850 (Neb. 2011).

[16] "Recklessness is the disregard for or indifference to the safety of another or for the consequences of one's act. Conduct is in reckless disregard to the safety of another if the actor intentionally does an act, or intentionally fails to do an act which it is his or her duty to another to do, knowing or having reason to know of facts which would lead a reasonable person to realize not only that his or her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his or her conduct negligent. Recklessness differs from intentional wrongdoing in that while the act must be intended by the actor in order to be considered reckless, the actor does not intend to cause the harm which results from the act." *Dotzler v. Tuttle*, 449 N.W.2d 774, 782 (Neb. 1990).

[17] LeFever is not required to plead that he has complied with this statutory requirement, but noncompliance can be raised as an affirmative defense. *See Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 4599832, at *5 (D. Neb. Sept. 25, 2018).

### 2. Case No. 4:20CV3067

Sheriff Kramer, Deputy Kramer, and Deputy Schmidt are employed by Lincoln County, which is a political subdivision of the State of Nebraska. The claims made against them clearly arise out of an alleged assault, battery, or false arrest, for which the State has not waived sovereign immunity under the PSTCA.

### 3. Case No. 4:20CV3068

Because NSP is a department of the State of Nebraska, and Trooper Trevino is a state employee, the PSTCA does not apply to these Defendants. Instead, the claims made against them are covered by the State Tort Claims Act ("STCA"), Neb. Rev. Stat. §§ 81-8,209 to 81-8,235. "Under Nebraska law, a state official acting within the scope of his or her employment at the time of an alleged tort must be sued in his or her official capacity, and the plaintiff must 'comply with the requisites set out in the [STCA].'" *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (quoting *Bohl v. Buffalo Cty.*, 557 N.W.2d 668, 673 (Neb. 1997)).[18]

However, any waiver of the State's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Id.* at 293 (citing Neb. Rev. Stat. § 81-8,214 ("Suits [under the STCA] shall be brought in the district court of the county in which the act or omission complained of occurred, ….")). "State sovereign immunity bars actions in federal court regardless of the basis for otherwise appropriate subject matter jurisdiction." *Id.*; *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002) (holding the Eleventh Amendment bars actions in federal court even where 28 U.S.C. § 1367, in general, authorizes supplemental jurisdiction). Thus, LeFever's tort claims against NSP and Trooper Trevino must be brought in state court. *See Carter v. Muldoon*, No. 8:17CV319, 2018 WL 2049841, at *6 (D. Neb. May 1, 2018) (no subject-matter jurisdiction over STCA claim).

---

[18] The STCA provides that "every tort claim permitted under the State Tort Claims Act shall be forever barred unless within two years after such claim accrued the claim is made in writing to the Risk Manager in the manner provided by such act." Neb. Rev. Stat. § 81-8,227. The STCA also contains an "intentional torts" exception. *See* Neb. Rev. Stat. § 81-8,219(4).

24

## VI. CONCLUSION

LeFever's complaints are subject to dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A. On the court's own motion, however, LeFever will be given leave to file an amended complaint within 30 days.

IT IS THEREFORE ORDERED:

1.    The § 1983 claims alleged in Case No. 4:20CV3068 against Defendants Nebraska State Patrol and Trooper Carlos Trevino, in his official capacity, are dismissed with prejudice and without leave to amend. However, the court on its own motion grants Plaintiff leave to file an amended complaint within 30 days to include a § 1983 claim against Trooper Trevino in his individual capacity only.

2.    The state-law claims alleged in Case No. 4:20CV3068 are dismissed without prejudice to refiling in state court.

3.    The court on its own motion grants Plaintiff leave to file an amended complaint within 30 days which states a claim upon which relief may be granted against Deputy Ivan Castellanos, in his official and/or individual capacity. If an amended complaint is not filed within 30 days, all claims alleged in Case No. 4:20CV3066 will be dismissed without prejudice and without further notice.

4.    The court on its own motion grants Plaintiff leave to file an amended complaint within 30 days which states claims upon which relief may be granted against Sheriff Jerome Kramer, Deputy Roland Kramer, and Deputy Brett C. Schmidt, in their official and/or individual capacities. If an amended complaint is not filed within 30 days, all claims alleged in Case No. 4:20CV3067 will be dismissed without prejudice and without further notice.

5.    If Plaintiff elects to file an amended complaint, it shall be filed as a single document in Case No. 4:20CV3066. **Plaintiff is warned that an amended complaint will supersede, not supplement, all of his previously filed complaints. Plaintiff must include all of the claims he wishes to pursue against all of the**

**defendants he wishes to proceed against in the amended complaint, without relying upon or incorporating by reference any allegations made in the original complaints. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when and where the defendant did it, and how the defendant's actions harmed him.**

6.      The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

7.      The clerk of the court is directed to set a pro se case management deadline using the following text: **September 2, 2020**: check for amended complaint.

8.      The clerk's office is directed to remove Dawson County Sheriff's Department as a defendant in Case No. 4:20CV3066.

9.      The clerk's office is directed to remove Lincoln County Sheriff's Dept. as a defendant in Case No. 4:20CV3067.

Dated this 3rd day of August, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

26