IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUKE LEFEVER,<br><br>                Plaintiff,<br><br>    vs.<br><br>IVAN CASTELLANOS, Dawson County Deputy, in his official and individual capacities; JEROME KRAMER, Lincoln County Sheriff, in his official and individual capacities; DEPUTY ROLAND KRAMER, Chief Deputy, in his official and individual capacities; BRETT SCHMIDT, Deputy, in his official and individual capacities; CARLOS TREVINO, Nebraska State Patrol Trooper, in his individual capacity; and ELWOOD, Nebraska State Patrol Trooper Sgt., in his individual capacity,<br><br>                Defendants. | **4:20CV3066**<br><br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff, Luke LeFever ("LeFever") a state prisoner currently incarcerated at the Tecumseh State Correctional Institution, filed three separate actions on June 11, 2020. The actions were consolidated on the court's own motion on June 15, 2020, as involving common questions of law or fact, *see* Fed. R. Civ. P. 42, and LeFever was granted leave to proceed in forma pauperis with the obligation to pay only a single filing fee under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b). The court conducted an initial review of LeFever's three Complaints pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and, in a Memorandum and Order entered on August 3, 2020 (Filing 7), concluded the Complaints were subject to preservice dismissal. However, on the court's own motion, LeFever was given leave to file a single amended complaint in this case. After obtaining a 90-day extension, LeFever timely filed his Amended Complaint (Filing 10) on November 23, 2020.

## I. SUMMARY OF AMENDED COMPLAINT

In granting LeFever leave to amend, the court warned him that an amended complaint would supersede, not supplement, his prior pleadings. (See Filing 7 at 25.) Accordingly, the court will review only the allegations of the Amended Complaint, and will not consider any additional allegations that may be contained within the three original Complaints.

LeFever alleges that on June 4, 2018, he had a roadside encounter with Deputy Ivan Castellanos of the Dawson County Sheriff's Office, and was searched with his consent. After being told he was not under arrest, LeFever began to walk away but was tased in the back by Deputy Castellanos. LeFever fell to the ground and was given repeated shocks, but was able to regain his feet, pull out the taser wires, and run away. Deputy Castellanos discharged his sidearm at the fleeing LeFever, but missed. Plaintiff alleges Deputy Castellanos then made radio reports in which he falsely claimed LeFever had weapons and there had been "shots fired." As a result of these allegedly false radio reports, LeFever claims other law enforcement officers pursued and apprehended him using deadly force. Those officers fired 68 rounds of ammunition into a vehicle LeFever was driving, and he was struck with 9 of these rounds.

LeFever alleges he wound up in a pasture, where the vehicle he was driving was intentionally T-boned by Trooper Carlos Trevino of the Nebraska State Patrol ("NSP"), who drove through a fence with his patrol truck. When LeFever's vehicle began moving again, Trooper Trevino and three officers from the Lincoln County Sheriff's Office, including Sheriff Jerome Kramer, Chief Deputy Roland Kramer, and Deputy Brett Schmidt, began firing their weapons at the vehicle. It is also alleged that Sergeant Elwood of the NSP later lied about calling Dawson County dispatch to confirm the "shots fired" report.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review,

the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III.  JURISDICTION

Federal district courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).

Liberally construing the allegations of LeFever's Amended Complaint, he is claiming Defendants violated his rights under the United States Constitution, and he is bringing suit under authority of 42 U.S.C. § 1983. In addition, LeFever is asserting various tort claims under Nebraska law. Because LeFever does not allege that his citizenship lies outside of Nebraska, this court's ability to entertain the state-law claims cannot be predicated on § 1332, but instead must depend upon 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[1]

## IV. DISCUSSION OF CLAIMS

### A. Federal Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.* at 50.

It is reasonable to infer from LeFever's allegations that all Defendants were acting under color of state law when they allegedly violated his constitutional rights, and all are sued in their individual capacities. The county law enforcement officers are also sued in their official capacities, which effectively makes Dawson County and Lincoln County parties to the action. *See Baker v. Chisom*, 501 F.3d 920, 923

---

[1] When the district court has disposed of all federal claims that conferred original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367 (c)(3). Usually, the dismissal of the federal claims "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted).

(8th Cir. 2007) ("A suit against government officials in their official capacities is another way of pleading an action against the entity of which they are agents.").

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against Dawson County or Lincoln County, LeFever must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

5

4:20-cv-03066-RGK-PRSE   Doc # 14   Filed: 02/04/21   Page 6 of 21 - Page ID # 77

## 1. Claims Against Deputy Castellanos

The Fourth Amendment protects against "unreasonable … seizures" of persons and property. U.S. Const. amend. IV. To establish a violation of Fourth Amendment rights under 42 U.S.C. § 1983, a plaintiff must show that a seizure occurred and that it was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). A Fourth Amendment "seizure" requires an intentional act by a governmental actor. *McCoy v. City of Monticello*, 342 F.3d 842, 847 (8th Cir. 2003).

LeFever alleges that Deputy Castellanos (1) shot him in the back with a taser probe while he was walking away from the deputy after being told he was not under arrest, (2) fired a shot at LeFever with his service weapon as LeFever was running away after being tased, and (3) radioed in a false "shots fired" call after discharging his weapon. Under Eighth Circuit precedent, only the first of these actions may give rise to a plausible Fourth Amendment claim. However, the second action may involve a substantive due process violation.

### a. Taser Deployment

The Eighth Circuit has stated that in accordance with the Supreme Court's decision in *California v. Hodari D.,* 499 U.S. 621 (1991), "our understanding of a Fourth Amendment seizure of the person flows from the common law." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013). The Court of Appeals explained:

> Although "seizure" and "arrest" were not identical at common law, we look to the common law concept of arrest to "define[ ] the limits of a seizure of the person." *Hodari D.,* 499 U.S. at 627 n. 3, 111 S.Ct. 1547 (emphasis omitted). At common law, "[i]t [wa]s perfectly clear that ... touching the person constitute[d] an arrest." *Sandon v. Jervis,* (1859) 120 Eng. Rep. 760 (Exch.Cham.) 762; El. Bl. & El. 942, 947 (Williams, J.); *see also Genner v. Sparks,* (1704) 87 Eng. Rep. 928 (Q.B.) 929; 6 Mod. 173 (per curiam) ("[I]t was agreed, that if here he had but touched the defendant even with the end of his finger, it had been *an arrest.*").

6

Physical contact was not the sole means of arrest under the common law. *See, e.g., Arrowsmith v. Le Mesurier,* (1806) 127 Eng. Rep. 605 (Ct.Com.Pl.) 606; 2 Bos. & Pul. (N.R.) 211, 211 ("I can suppose that an arrest may take place without an actual touch."). Common law arrest required "'*either* touching *or* submission.'" *Hodari D.,* 499 U.S. at 627, 111 S.Ct. 1547 (quoting Rollin M. Perkins, *The Law of Arrest,* 25 Iowa L.Rev. 201, 206 (1940)) (emphasis added). Because the Supreme Court has directed us to apply this common law dichotomy to seizure of the person under the Fourth Amendment, we similarly "require[ ] *either* physical force ... *or,* where that is absent, *submission* to the assertion of authority." *Id.* at 626, 111 S.Ct. 1547.

To constitute a Fourth Amendment seizure, an application of physical force "must be willful" because "the word 'seizure' ... can hardly be applied to an unknowing act." *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Whether physical force was "intentionally applied," *id.* at 597, 109 S.Ct. 1378 (emphasis omitted), is determined by the officer's objective behavior, not his subjective motive. *Cf. Brendlin v. California,* 551 U.S. 249, 260, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Also implicit in the term "seizure" is a requirement that the application of physical force "restrain[ ] ... freedom of movement." *Id.* at 254, 127 S.Ct. 2400. This restraint need not actually "'succeed in stopping or holding [the person] even for an instant.'" *Hodari D.,* 499 U.S. at 625, 111 S.Ct. 1547 (quoting Asher Cornelius, *Search and Seizure* 163-64 (2d ed.1930)). But the seizure does not outlast the restraint on free movement. *See id.* at 624-25, 111 S.Ct. 1547.

*Id.* at 1208.

Provided that Deputy Castellanos acted intentionally, his deployment of a taser probe into LeFever's back was a "seizure" for Fourth Amendment purposes, even though it did not prevent LeFever from running away.[2] *See Ludwig v.*

---

[2] The result would be different in those circuits which read *Hodari D.* and other Supreme Court precedent as "requiring intentional termination of movement or acquisition of physical control in flight situations, regardless of the force applied." *Brooks v. Gaenzle,* 614 F.3d 1213, 1223 (10th Cir. 2010) (citing cases); *see, e.g., Tabares v. City of Huntington Beach*, No. 818CV00821JLSJDE, 2019 WL 4455999,

*Anderson*, 54 F.3d 465, 471 (8th Cir. 1995) ("[A] seizure is 'effected by the slightest application of physical force' despite later escape." (quoting *Hodari D.,* 499 U.S. at 625)).

"The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. [The court] must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." *Zubrod v. Hoch*, 907 F.3d 568, 575-76 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (cleaned up)).

While it is plausible to conclude, based on the few facts alleged by LeFever, that Deputy Castellanos's taser deployment was objectively unreasonable under the circumstances, the resulting Fourth Amendment "seizure" ended when LeFever ran away from the deputy. "[I]f someone is 'seized,' and then somehow gets away, as [LeFever] did, the first seizure 'does not continue during the 'period of fugitivity.'" *Gardner v. Buerger*, 82 F.3d 248, 254 (8th Cir. 1996) (quoting *Ludwig,* 54 F.3d at 471, in turn quoting *Hodari D.,* 499 U.S. at 625). "Thus, several distinct seizures may occur during a single course of events or encounter with the police." *Id.*

### b. Discharge of Service Weapon

It is alleged that Deputy Castellanos next discharged his service weapon, but LeFever does not claim to have been struck by a bullet in this instance. Because LeFever was not wounded and did not submit to this display of force or to any commands that may have been issued at this time, there was no second "seizure" by Deputy Castellanos. *See Atkinson, supra*; *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir. 1993) ("[A] seizure occurs only when the pursued citizen is physically touched by the police or when he submits to a show of authority by the police."). Without a "seizure," there was no violation of LeFever's Fourth Amendment rights.

at *5 (C.D. Cal. July 30, 2019) (officer's deployment of taser, which had no apparent incapacitating effect on suspect, was not a seizure).

Although no Fourth Amendment claim can be maintained in the absence of a "seizure," a misaimed shot might give rise to a substantive due process claim under the Fourteenth Amendment. *See, e.g., James v. Chavez*, 830 F. Supp. 2d 1208, 1271 (D.N.M. 2011) ("The Court has concluded that, when Carter fired a shot at Murphy Sr., no seizure occurred. The Court has also concluded that Carter did not seize M. Murphy when he missed her with his bullet. Thus, James may proceed on a substantive due-process theory regarding Carter firing a shot at Murphy Sr. and M. Murphy as the Fourth Amendment does not apply to those situations."), *aff'd*, 511 F. App'x 742 (10th Cir. 2013). To establish a substantive due process violation under the Fourteenth Amendment, LeFever must show that Deputy Castellanos' conduct in discharging his service weapon was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Braun v. Burke*, 983 F.3d 999, 1002 (8th Cir. 2020). Negligence is never enough. *Id.* Deliberate indifference makes sense "only when actual deliberation is practical." *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)). But, typically—and especially in "rapidly evolving, fluid, and dangerous situations"—the plaintiff must show an intent to harm. *Id.* Liberally construing LeFever's allegations, the requisite intent to harm is alleged.

### c. False Radio Report

Finally, LeFever alleges Deputy Castellanos then made a false radio call that LeFever was armed and shots were fired, which caused other law enforcement officers to pursue LeFever and use deadly force to apprehend him. While LeFever was "seized" by the other officers, the court is not aware of any reported decision which holds that an officer who merely broadcasts false information can be held liable for a § 1983 "excessive force" claim. *See, e.g., Goolsby v. D.C.*, 317 F. Supp. 3d 582, 597 (D.D.C. 2018) ("In the absence of any case law suggesting that a dispatcher can be held liable for a police officer's use of excessive force, the Court concludes that any constitutional violation here is not clearly established.").

Simple negligence is not sufficient. *See, e.g., Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (mistake of police communications operator in identifying person who was subject of arrest warrant, and arresting officer's reliance

on it to arrest innocent person, did not render an arrest "unreasonable" within the meaning of the Fourth Amendment, as actions of operator and officer amounted to nothing more than negligence); *Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006) ("[T]he dispatchers are not liable for their negligent transmissions or their failure to ascertain more details before sending out BOLOs [be-on-the-lookout notices] mentioning a possible robbery. In most contexts, negligence is insufficient to support a § 1983 claim. Given that there is no evidence of deliberate indifference or recklessness …, the [plaintiffs] have not established a basis to hold the [police] dispatchers accountable for a seizure in which they did not directly participate." (internal quotations and citations omitted)).

It is therefore significant that LeFever alleges Deputy Castellanos made the false reports in "attempting to cover up the unjustifiable continual escalat[ion] in levels of force" during their encounter. (Filing 10 at 3.) *See Goolsby*, 317 F. Supp. 3d at 596 (police dispatcher might violate Fourth Amendment by "maliciously misleading police officers without suspicion of wrongdoing in a manner that leads to another's detention").[3]

As a matter of law, it has been that "if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1332 (11th Cir. 2006); *see Trang Nguyen v. Lokke*, No. 11-CV-3225 PJS/SER, 2013 WL 4747459, at *4

---

[3] *Goolsby* and the other cases cited involved § 1983 "false arrest" claims, which turn on the question of whether the arresting officers acted with probable cause. *See Parsons v. McCann*, 138 F.Supp.3d 1086, 1106 (D. Neb. 2015) ("A false arrest is a violation of the Fourth Amendment right against the unreasonable seizure of persons."). In contrast, a § 1983 "excessive force" claim can exist regardless of whether the officers had probable cause to make an arrest; the pivotal question, rather, is whether the amount of force the officers used in seizing the person was objectively reasonable. "Although an excessive force claim is subject to a 'reasonableness' standard under the Fourth Amendment as is a false arrest claim, the two claims require quite different inquiries." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). "Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Id.*

(D. Minn. Sept. 4, 2013) ("When there is no right to seize a citizen—that is, when there is no right to detain a citizen even momentarily—then there is also no right to use force against that citizen."); *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 n. 13 (9th Cir. 2015) ("Like this court, all other circuits that have addressed the question prohibit a finding of excessive force predicated *only* on the fact of unlawful arrest…. That principle, however, is fully consistent with the recognition that 'the damages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest.'" (quoting *Bashir,* 445 F.3d at 1332) (emphasis in original)); *but cf. United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("[A] defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest."); *Velazquez*, 793 F.3d at 1024 ("[F]orce used by an officer to effectuate an arrest, 'regardless of whether [the officer] had probable cause to [make the] arrest,' may still be reasonable, for instance to overcome the arrestee's forcible resistance." (quoting *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 921-22 (9th Cir.2001)).

This line of cases suggests that if the other law enforcement officers seized LeFever in the erroneous belief they had probable cause to arrest him because of the "shots fired" radio call, and if Deputy Castellanos acted with a higher degree of culpability than negligence in making that call, then Deputy Castellanos might be held liable for LeFever's physical injuries as part of a § 1983 "false arrest" claim, as opposed to an "excessive force" claim.[4] *See Berg v. County of Allegheny,* 219 F.3d

_____

[4] The Eighth Circuit analyzed a similar claim under the Due Process Clause of the Fourteenth Amendment in *Griffin v. Hilke*, 804 F.2d 1052, 1055 (8th Cir. 1986) (holding police officer was not liable to fleeing suspect who was shot in leg by another officer after first officer transmitted erroneous broadcast which indicated suspect was armed, because record failed to disclose any evidence that first officer was more than negligent). However, the *Griffin* decision predates *Graham v. Conner*, 490 U.S. 386 (1989), in which the Supreme Court held that "[t]he Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019). The court therefore does not construe LeFever's Amended Complaint as alleging a substantive due process violation in connection Deputy Castellanos radio report of "shots fired." *But see Berg*, 219 F.3d at 274 ("Where a defendant does not intentionally cause the plaintiff to be seized,

261, 272 (3d Cir. 2000) ("As a general rule, a government official's liability for causing an arrest is the same as for carrying it out. It is thus clear that § 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." (citations omitted)); *Goolsby*, 317 F. Supp. 3d at 598  n. 6 ("As courts of appeals have recognized, damages awarded on a false arrest claim can potentially include damages related to the use of force to effectuate the arrest."); *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1548 (2017) ("[P]laintiffs can—subject to qualified immunity[5]—generally recover damages that are proximately caused by any Fourth Amendment violation. Thus, there is no need to dress up every Fourth Amendment claim as an excessive force claim." (citations omitted)).

It should be pointed out, however, that "[i]f a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see, e.g.*, *Horton v. Pennington*, No. 5:17-CV-05160, 2018 WL 1023116, at *3-4 (W.D. Ark. Feb. 22, 2018) (staying plaintiff's claim that he was arrested without probable cause, because that constitutional claim could be raised in his criminal case, but allowing excessive force claim to proceed where it had no bearing on his criminal case, given that he was not charged with resisting arrest or any related offense). The court takes judicial notice that criminal charges are pending against Lefever in two counties as a result of events on June 4, 2018. *See State of Nebraska v. Luke LeFever*, Case No. CR20-40, District Court of Dawson

---

but is nonetheless responsible for the seizure, it may be that a due process 'deliberate indifference' rather than a Fourth Amendment analysis is appropriate." (dictum)).

[5] [L]aw enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005); *see, e.g.*, *Williams v. Decker*, 767 F.3d 734, 743 (8th Cir. 2014) (officers were entitled to qualified immunity where they arrested plaintiff based upon inaccurate information provided by dispatcher).

County, Nebraska; *State of Nebraska v. Luke LeFever*, Case No. CR20-30, District Court of Lincoln County, Nebraska.[6]

In summary, LeFever has alleged three plausible § 1983 claims against Deputy Castellanos: (1) a Fourth Amendment "excessive force" claim for shooting LeFever with a taser probe; (2) a Fourteenth Amendment substantive due process claim for firing his service weapon at LeFever; and (3) a Fourth Amendment "false arrest" claim for making false radio reports that led to LeFever's arrest through the use of deadly force.

Although the Amended Complaint states plausible claims for relief against Deputy Castellanos in his individual capacity, there are no facts alleged from which it might reasonably be inferred that Dawson County is liable for the claimed constitutional violations. "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). The § 1983 claims alleged against Deputy Castellanos in his official capacity therefore will be dismissed without prejudice.

   2. Claims Against Sheriff Kramer and Deputies Kramer and Schmidt

   "Both the Supreme Court and [the Eighth Circuit] have repeatedly stated that '[a]n officer may not use deadly force against a fleeing suspect *unless* the suspect poses an *immediate and significant threat* of serious injury or death to the officer or to bystanders.'" *Wallace v. City of Alexander*, 843 F.3d 763, 769 (8th Cir. 2016) (emphasis in original; quoting *Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015)); *see Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent

---

   [6] The state court records are available at https://www.nebraska.gov/justice/. LeFever's imprisonment at the Tecumseh State Correctional Institution stems from an unrelated April 1, 2019 conviction in *State of Nebraska v. Luke E.F. LeFever*, Case No. CR19-6, District Court of Howard County, Nebraska.

escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.").[7]

The court concludes for purpose of initial review that LeFever has alleged sufficient facts to state plausible Fourth Amendment "excessive force" claims against Sheriff Kramer, Chief Deputy Kramer, and Deputy Schmidt in their individual capacities for their actions in firing multiple rounds of ammunition at LeFever's vehicle. Even assuming the officers had probable cause to believe from Deputy Castellanos' allegedly false reports that LeFever was armed and had fired shots, it is not clear the barrage of bullets was necessary to prevent his escape, or that a warning could not have been given before shooting.

LeFever does not allege that Lincoln County has an official policy authorizing the use of deadly force against a fleeing suspect in the absence of a threat of serious physical harm to the officer or others, nor does he allege there was an unofficial custom to this effect. However, "even in the absence of an official policy or a custom, the Supreme Court has made clear that though proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (cleaned up). In this scenario, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur,* 475 U.S. at 481).

---

[7] "Deadly force is such force that creates a substantial risk of causing death or serious bodily harm." *Church v. Anderson*, 249 F. Supp. 3d 963, 968 n. 2 (N.D. Iowa 2017) (quoting *Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009), *aff'd,* 898 F.3d 830 (8th Cir. 2018). "Thus, deadly force includes shooting a person with a firearm even where that person does not die." *Id.*

In Nebraska, a county sheriff exercises final policymaking authority for the county in the area of law enforcement. *Dean v. Cty. of Gage*, 807 F.3d 931, 941-42 (8th Cir. 2015); *see Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (county sheriff, as final policymaker, allegedly condoned use of excessive force against fleeing arrestees). Given Sheriff Kramer's presence at the scene of the alleged constitutional violation, the official-capacity claim alleged against him may proceed. The official-capacity claims alleged against the deputies will be dismissed without prejudice.

### 3. Claims Against Trooper Trevino and Sergeant Elwood

LeFever alleges Trooper Trevino also fired multiple rounds of ammunition at his vehicle. As with the Lincoln County Defendants, the court concludes there is a plausible Fourth Amendment "excessive force" claim that can go forward against Trooper Trevino in his individual capacity.[8]

With respect to Sergeant Elwood, however, no plausible claim for relief under § 1983 is stated. LeFever alleges:

> Trooper Elwood became a factor after it was determined to have been incorrect radio report from Dawson County Sheriff's Department. Elwood actively tried to lie about calling Dawson County Disbatch on 3 seperate occasion's to confirm that it was "bad guy shooting at good guy". Investigator Foote of the North Platte PD who lead an indipendant investigation said that very early on Elwood was emphasizing these made phone calls. It was determined by Foote that he could find no record of those comunication's claimed by Elwood. This was a common theme for every one involved with this incident, in essence they tried to blame others and lie all to attempt to make reasons to justify what they did to me.

---

[8] The court previously dismissed with prejudice an official-capacity § 1983 claim alleged against Trooper Trevino, and LeFever has not attempted to reassert that claim in the Amended Complaint.

(Filing 10 at 5 (unedited).) LeFever's theories of recovery include "supervisory negligence, false reporting, fabrication of evidence, poor training, poor judgment." (Filing 10 at 6.)

As already discussed, a § 1983 claim cannot be founded on negligence. Also, "[s]ection 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019). A supervisor may be held liable "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)). The plaintiff must show that the supervisor "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]." *Id.* (quoting *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018). There are no facts alleged here to support a claim for supervisory liability.

It appears Sergeant Elwood's alleged falsifications were made after the fact and did not play a part in causing LeFever to be subjected to the use of excessive force and arrested. Nor do they appear to have been a factor in the ongoing criminal prosecutions. *Cf. Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012) ("False evidence or evidence derived from a reckless investigation only violates a criminal defendants' due process rights if it is 'used to deprive the defendant of her liberty in some way.'" (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)).

False reporting or fabrication of evidence might give rise to a claim for denial of access to the courts under the First Amendment, *see, e.g.*, *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843 (8th Cir. 2013) (conspiracy between arresting officers and police supervisors to prevent plaintiff from bringing viable § 1983 action by covering up false arrest), but the facts alleged by LeFever also do not support such a claim. "[W]hen the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In this case, LeFever is actively pursuing claims against the officers who were involved in his arrest, and he does not

allege that Sergeant Elwood's lies have caused him any actual injury. *See Ellingson v. Piercy*, No. 2:14-CV-04316-NKL, 2016 WL 4033259, at *5 (W.D. Mo. July 27, 2016) (dismissing denial-of-access claim for lack of actual injury); *Cheeks v. Belmar*, No. 4:18-CV-2091-SEP, 2020 WL 5569982, at *20 (E.D. Mo. Sept. 17, 2020) (same).

### B. State Claims

As the court discussed in its previous Memorandum and Order, it does not have subject matter jurisdiction over claims made against NSP employees that are covered by the State Tort Claims Act ("STCA"), Neb. Rev. Stat. §§ 81-8,209 to 81-8,235. "Under Nebraska law, a state official acting within the scope of his or her employment at the time of an alleged tort must be sued in his or her official capacity, and the plaintiff must 'comply with the requisites set out in the [STCA].'" *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (quoting *Bohl v. Buffalo Cty.*, 557 N.W.2d 668, 673 (Neb. 1997)). Any waiver of the State's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Id.* at 293 (citing Neb. Rev. Stat. § 81-8,214 ("Suits [under the STCA] shall be brought in the district court of the county in which the act or omission complained of occurred, ….")). "State sovereign immunity bars actions in federal court regardless of the basis for otherwise appropriate subject matter jurisdiction." *Id.*; *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002) (holding the Eleventh Amendment bars actions in federal court even where 28 U.S.C. § 1367, in general, authorizes supplemental jurisdiction). Because it is not alleged that Trooper Trevino or Sergeant Elwood were acting outside the scope of their employment, LeFever's state-law tort claims against these officers must be brought in state court. *See, e.g., Carter v. Muldoon*, No. 8:17CV319, 2018 WL 2049841, at *6 (D. Neb. May 1, 2018) (no subject-matter jurisdiction over STCA claim).

As also discussed by the court in its previous Memorandum and Order, the Nebraska Political Subdivisions Tort Claims Act ("PSTCA"), Neb. Rev. Stat. § 13-901 to 13-928, "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *17 (D. Neb. Sept. 16, 2019) (quoting *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007)); *see* Neb. Rev. Stat. § 13-902 ("[N]o suit shall

be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA].”). Dawson County and Lincoln County are political subdivisions of the State of Nebraska. *See* Neb. Rev. Stat. § 13-903(1).

“Where a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA.” *McKenna v. Julian*, 763 N.W.2d 384, 390 (Neb. 2000) (affirming dismissal of claims brought against individual police officer for assault, battery, and false arrest, based on sovereign immunity), *abrogated on other grounds by Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264 (Neb. 2010). “Claims against a political subdivision employee for acts and omissions performed in the course and scope of employment are deemed actions against the county and not the employee personally.” *Foell v. Cty. of Lincoln*, No. 4:17CV3044, 2019 WL 2996276, at *14 (D. Neb. July 9, 2019) (citing *Cappel v. State*, 298 Neb. 445, 452 (Neb. 2018)). Because it does not appear that any actions allegedly taken by Dawson County Deputy Castellanos, or by Lincoln County Sheriff Kramer and his Deputies, were performed outside the course and scope of their employment, the PSTCA applies in this case. Whether LeFever’s claims, as pleaded, are actionable under the PSTCA is a separate question, which does not need to be addressed at this time.

## V. CONCLUSION

The court concludes on initial review of LeFever’s Amended Complaint that the following plausible § 1983 claims are stated: (1) a Fourth Amendment “excessive force” claim against Deputy Castellanos, in his individual capacity, for tasing LeFever; (2) a Fourteenth Amendment substantive due process claim against Deputy Castellanos, in his individual capacity, for firing his service weapon at LeFever; (3) a Fourth Amendment “false arrest” claim against Deputy Castellanos, in his individual capacity, for radioing there were “shots fired” and LeFever was armed; (4) a Fourth Amendment “excessive force” claim against Sheriff Kramer, in his individual and official capacities, for firing rounds of ammunition into the vehicle LeFever was driving, and for condoning his deputies’ use of deadly force against LeFever; (5) a Fourth Amendment “excessive force” claim against Chief Deputy Kramer, in his individual capacity, for firing rounds of ammunition into the vehicle

LeFever was driving; (6) a Fourth Amendment "excessive force" claim against Deputy Schmidt, in his individual capacity, for firing rounds of ammunition into the vehicle LeFever was driving; and (7) a Fourth Amendment "excessive force" claim against Trooper Trevino, in his individual capacity, for crashing into the vehicle LeFever was driving and then firing rounds of ammunition into the vehicle. The only official-capacity § 1983 claim that will proceed to service is the claim against Sheriff Kramer. The Amended Complaint does not state a plausible § 1983 claim against Sergeant Elwood. The court lacks jurisdiction over any state-law claim alleged against Trooper Trevino or Sergeant Elwood, but may exercise supplemental jurisdiction over state-law claims alleged against other Defendants.

IT IS THEREFORE ORDERED:

1.     All state-law claims alleged against Defendant Nebraska State Patrol Trooper Carlos Trevino, in his individual capacity, are dismissed without prejudice.

2.     All claims (federal and state) alleged against Defendant Nebraska State Patrol Trooper Sergeant Elwood, in his individual capacity, are dismissed without prejudice, and he shall no longer be a party to this action.

3.     All official-capacity claims alleged against Dawson County Deputy Ivan Castellanos, Chief Deputy Roland Kramer, and Deputy Brett Schmidt are dismissed without prejudice.

4.     The Clerk of the Court shall prepare one summons form and one USM-285 form for each of the following five Defendants:

> Ivan Castellanos, in his individual capacity
> Dawson County Sheriff's Office
> 709 N. Grant Street
> Lexington, NE 68850
>
> Jerome Kramer, in his official and individual capacities
> Lincoln County Sheriff's Office
> 302 North Jeffers Street
> North Platte, NE 69101

Roland Kramer, in his individual capacity
Lincoln County Sheriff's Office
302 North Jeffers Street
North Platte, NE 69101

Brett Schmidt, in his individual capacity
Lincoln County Sheriff's Office
302 North Jeffers Street
North Platte, NE 69101

Carlos Trevino, in his individual capacity
Nebraska State Patrol
300 West South River Road
North Platte, NE 69101

5.     The Clerk of the Court shall forward the completed summonses and USM-285 forms to the United States Marshal Service, together with the necessary number of copies of Plaintiffs' Amended Complaint (Filing 10) and of this Memorandum and Order. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016). [9]

6.     The Marshals Service shall serve all process in this case without prepayment of fees from Plaintiffs.

7.     Federal Rule of Civil Procedure 4 (m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

---

[9] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."

8.     The Clerk of the Court is directed to set the following pro se case management deadline: May 5, 2021, check for completion of service of process.

Dated this 4th day of  February, 2021.

BY THE COURT:

Richard G. Kopf
Senior United States District Judge